UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
Case No. 23-cr-207 (DLF)

United Stated of America,

          Plaintiff,

v.

Brandon Scott Peery,

          Defendant.

**DEFENDANT'S POSITION ON SENTENCING**

## INTRODUCTION

Defendant Brandon Scott Peery, by and through his attorney, Ryan M. Pacyga, submits this memorandum regarding his position with respect to sentencing.

Mr. Peery pled guilty to Count One of the Information: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1), which is a Class A misdemeanor. The parties agree the base offense level is four and a two-level upward adjustment applies as a special offense characteristic due to the trespass occurring at a restricted building or grounds. The Government agreed to recommend a two-level reduction of the base offense level for acceptance of responsibility. The Government also agreed that if Mr. Peery met all the requirements, a two-level downward reduction under the Zero-Point Offender Guideline Provision would apply. The Presentence Investigation

Report (PSR) adopted the agreed upon recommendations and determined Mr. Peery's total offense level is 2 with a criminal history category of I. The sentencing guideline range of imprisonment is zero to six months and fine of $200.00 to $9,500.00.

Mr. Peery will be asking the Court to adopt the PSR's total offense level calculation and grant a downward variance with a probationary sentence. This request is largely based on Mr. Peery's acceptance of responsibility and the statutory sentencing factors found in 18 U.S.C. § 3553(a) which favor a variance.

## RELEVANT FACTS

Brandon Peery is a college-educated, 35-year-old married man. PSR ¶¶ 66, 58.  He's the eldest of two children born to parents who are still married. *Id*. ¶ 51. Mr. Peery's immediate family is aware of the instant offense and are supportive of him. *Id*. ¶¶ 52-53.  He speaks to his parents multiple times a week and also stays in touch with his sister. *Id*.

Mr. Peery and his wife own their home, but finances have been somewhat difficult. *Id*. ¶¶ 55, 90. They rent out two of the three bedrooms for rental income, but last had tenants in November 2023. *Id*. ¶ 85. However, new tenants just began renting in March 2024. Mr. Peery has been working as an Uber driver since November 2023 while trying to gain traction as an independent contractor-real estate agent for eXp Realty. *Id*. ¶¶ 68-69. The PSR notes that it appears Mr. Peery cannot afford to pay a fine in addition to restitution. *Id*.¶ 90.

Mr. Peery advised the PSR writer that on January 6, 2021, he traveled to Washington, D.C. to see then-President Trump speak. *Id.* ¶ 31. Mr. Peery never had any intention to go to, or enter, the U.S. Capitol building, but he did so when he got caught up in the moment with the crowd. *Id.* Mr. Peery was forthright with the PSR writer, stating that he knew his actions were wrong and he would never consider doing anything like it again. *Id.* Mr. Peery greatly regrets the decisions he made that day. *Id.*

Aside from taking responsibility and being remorseful, there are other facts for the court to consider at sentencing. Mr. Peery was caught up in the moment, but he did not yell to incite others during the events of January 6th, nor did he post to social media about it afterward. As noted in the Statement of Offense, Mr. Peery gestured to others upon entering the open Parliamentary door. Inside the capitol building, Mr. Peery calmly walked about the hallways. Not only that, but he actually attempted to dissuade others from destroying any property inside the Capitol Building and provided a full-throated, humble and honest statement to the agents that interviewed him. For the Court's own review of Mr. Peery's actions, the defense is submitting the following videos via USAfx: 2.42PM, 2.58PM, 3.05PM, 3.09PM.

Another factor to consider at sentencing is that Mr. Peery has complied with the conditions of release.

**ARGUMENT**

Mr. Peery is asking the court to follow the PSR writer and Government's agreement to adjust his total offense level to 2 and, after considering the statutory factors, grant a variance and order a probationary sentence.

Although the United States Sentencing Guidelines are advisory in nature, *United States v. Booker*, 543 U.S. 220 (2005), the first step for the Court in deciding a defendant's sentence, is to consider the properly calculated sentencing guidelines range. *Gall v. United States*, 552 U.S 38, 49 (2007); *Rita v. United States*, 551 U.S 338, 351 (2007). In determining a just sentence, the Court is prohibited from presuming that the Guidelines' range is reasonable. *Gall*, 552 U.S. at 50. Rather, the Court must "make an individualized assessment based on the facts presented." *Id*.

After the Court determines the guidelines range, it should then consider the factors set forth in 18 U.S.C. § 3553(a). *Gall* at 49-50. The Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The Court shall impose a sentence sufficient, but not greater than necessary to comply with the following purposes of sentencing:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2)(A-D).

The plea agreement contemplated, and the PSR calculated, a total offense level of 2 with a criminal history category of I, resulting in an advisory Sentencing Guideline range of zero to six months. This guideline range is found in Zone A of the sentencing table, and a sentence of imprisonment is not required. U.S.S.G. §§ 5C1.1(b), 2B2.3. Given Mr. Peery's total offense level of 2, a probationary sentence must be no more than three years. U.S.S.G. § 5B1.2(a)(2).

Mr. Peery respectfully asks this Court for a probationary sentence of 18 months, which would require a downward variance.

### A. The Statutory Sentencing Factors Support a Downward Variance to Probation.

A sentence of probation is a sufficient sentence for Mr. Peery because it is not greater than necessary to satisfy the statutory requirements of 18 U.S.C. § 3553(a). This Court has jurisdiction to impose a term of probation. 18 U.S.C. § 3561; *Gall*, 52 U.S. 38 (upholding District Court's variance of a probationary sentence for defendant convicted of conspiracy to distribute ecstasy).

A defendant who has been found guilty of an offense may be sentenced to a term of probation unless (1) the offense is a Class A or B felony and the defendant is an individual; (2) the offense is one for which probation has been expressly precluded; or (3) the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense. 18

U.S.C. § 3561(a). The Comprehensive Crime Control Act of 1984 makes probation a sentence in and of itself. 18 U.S.C. § 3561.

> Probation may be used as an alternative to incarceration, provided that the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing, including promoting respect for law, providing just punishment for the offense, achieving general deterrence, and protecting the public from further crimes by the defendant.

U.S.S.G. § 5B1.1, Intro. Commentary.

Mr. Peery's offense is not an offense prohibited from probation, and probation would meet the statutory purposes of sentencing. A probationary sentence would be appropriate considering the nature and circumstances of the offense. Mr. Peery traveled to Washington, D.C. to see then-President Trump speak, not to illegally enter the capitol building. At the time he arrived in Washington D.C, he still did not even know or contemplate walking over to the Capitol Building. Eventually, Mr. Peery was caught up in the moment with the crowd, which led to his poor decision to enter the building. He did not engage in any assaultive conduct or any damage to or destruction of property. He entered after many more had entered before him, peacefully.  He waved to the people behind him as he entered the Parliamentary door, but otherwise, calmly walked the hallways and did nothing to incite others. In fact, as stated in his interview with law enforcement, he dissuaded others from damaging or destroying any

property in the Capitol Building. Mr. Peery knows his actions were wrong and told the PSR writer that he would never consider doing anything like this again.

Mr. Peery's history and characteristics also support a variance to probation. Mr. Peery has zero criminal history. He has never been incarcerated. While he has had difficulty finding a vocation, he's a college educated man who has tried a wide variety of jobs. He is fortunate come from an intact home and to continue to have the love and support of his immediate family, including his wife.

Given the nature and circumstances of the offense, a probationary sentence in this case adequately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Probation is an adequate deterrence to criminal conduct because the guideline range of imprisonment would remain a sentencing option if there were a probation violation. Probation is also appropriate because public safety is not a concern with Mr. Peery.

In keeping with the purpose of Section 3553(a)(2)(D), probation of 18 months would provide sufficient time, supervision, and support to address his apparent underemployment.

### B. Prison Has More Meaning to Mr. Peery, and Probation Is an Appropriate Sanction.

A prison sentence has more meaning to a defendant who has not been imprisoned before or has had a limited history of incarceration. This is true of

Mr. Peery, who has never spent a single day in jail. Several courts have recognized the meaning of prison to a defendant in affirming or reversing sentences that do not take this into account. *See United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration); *see also United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming non-guideline sentence of 78 months from 108 months for defendant convicted of distributing child pornography, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in § 3553(a)(2)(A) and "adequate deterrence" in § 3553(a)(2)(B)); *United States v. Paul*, 239 F. App'x 353 (9th Cir. 2007) (defendant's 16-month sentence, the top end of the guideline range for unlawful receipt of federal funding, was unreasonably high because defendant was a first-time offender, returned the funds, and displayed remorse); *United States v. Jewell*, 2009 WL 1010877 (E.D. Ark. April 15, 2009) (defendant sentenced to 30 months in prison for aiding and abetting tax evasion because guideline range near the statutory maximum of 5 years was inappropriate for first time offender); *United States v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from re-

8

offending).

The PSR writer provided Judiciary Sentencing Information (JSIN) for the last five fiscal years. PSR ¶ 121. The PSR notes there were three defendants with the same primary guideline sentence as Mr. Peery who also did not receive a 5K1.1 substantial assistance departure. *Id*. The three defendants received a sentence of imprisonment in whole or in part, with an average length of three months and median length of one month. *Id*. The median is the number in the middle of a sorted series of numbers (*e.g.* in the series 1, 1, 3, the median is 1). For the JSIN provided, the series would have to be <u>1 month or less</u>, <u>1</u>, <u>7 or greater</u> given the average length of imprisonment was 3 months. If the court were inclined to order a sentence of imprisonment, 1 month or less would be in keeping with the small amount of JSIN data.

A federal prison sentence would represent a significant sanction greater than necessary to effectuate the purposes of sentencing. A downward variance to a probationary sentence is warranted upon examination of the need for the sentence imposed. *See* 18 U.S.C. § 3553(a)(2)(A)-(D). The Court should consider Mr. Peery's limited role, acceptance of responsibility, remorse, zero criminal history, lack of incarceration history, lack of danger to the community, support of immediate family, and the extreme unlikelihood of recidivism. Mr. Peery does not need correctional treatment. It appears an area of improvement in Mr. Peery's life is his underemployment. He can best work on this issue while in the

community on probation.

## CONCLUSION

Mr. Peery asks the Court to adopt the PSR's calculated total offense level of 2, and taking into account the statutory sentencing factors, sentence him to 18 months' probation, which would be a proper use of the court's discretion in granting a downward variance.

Respectfully submitted,

**RYAN PACYGA CRIMINAL DEFENSE**

Dated: April 3, 2024    By:    /s/ Ryan M. Pacyga
            Ryan M. Pacyga
            D.C. Bar No. MN0019
            860 Blue Gentian Rd., Ste. 175
            Saint Paul, MN 55121
            Office: (612) 339-5844
            *E-mail: ryan@arrestedmn.com*
            *Attorney for Defendant*